[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} Appellants Christopher and Sandra Holland appeal the trial court's entry of summary judgment in favor of appellee Old Republic Insurance Company ("Old Republic"). On July 28, 1997, Christopher, a minor, was a passenger in an automobile driven by Brian Williamson, an uninsured motorist. Christopher was injured when Williamson allegedly lost control of the automobile and collided with some trees.
 {¶ 3} On the day of the accident, Sandra, Christopher's mother, was an employee of the Fusite Division of Emerson Electric Company ("Emerson Electric"). In 1997, Emerson Electric had purchased a business auto policy ("BAC" policy) and a general commercial liability policy ("GCL" policy) from Old Republic, effective from April 1, 1997, to April 1, 2000.
 {¶ 4} The Hollands filed a lawsuit against Old Republic, seeking uninsured motorists coverage under the two policies. The Hollands moved for summary judgment, arguing that Ohio Supreme Court's decision inScott-Pontzer[1] entitled them to uninsured motorists coverage as a matter of law.
 {¶ 5} Old Republic also moved for summary judgment, disputing that coverage was owed under the policies. The trial court overruled the Hollands' summary-judgment motion, granted Old Republic's summary-judgment motion, and dismissed Old Republic from the lawsuit. In their sole assignment of error, the Hollands now contend that the trial court erred in granting summary judgment to Old Republic. Old Republic raises a cross-assignment.
 {¶ 6} We review the appropriateness of summary judgment de novo.[2] Summary judgment is proper when "(1) no genuine issue as to any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed in favor of the nonmoving party, that reasonable minds can only find against the nonmoving party.[3]
 {¶ 7} The Hollands argue that Scott-Pontzer entitles them to uninsured motorists coverage. In Scott-Pontzer, the Ohio Supreme Court concluded that an employee could sue her employer's insurance carrier for uninsured motorists coverage under the employer's commercial automobile liability policy because "you," as used in the policy to define an insured, was ambiguous. Under the policy in Scott-Pontzer, only the employer-corporation was designated as the named insured. The policy defined an insured as "you" and "[i]f you are an individual, any family member," and "[a]nyone else occupying a covered auto or a temporary substitute for a covered auto * * *." The court concluded that because a corporation can act only by and through live persons, an ambiguity existed, and it construed the policy to cover a corporation's employees.
 {¶ 8} We first address the Old Republic's BAC policy. The policy consisted of a declarations page and several endorsements that modified its business auto coverage form. The BAC policy stated that the named insured was "Emerson Electric et al." "Et al," according to Black's Law Dictionary, means "[a]nd other persons."[4] Thus, Emerson Electric was not the only named insured. The policy subsequently listed several pages of "Named Insureds," including several individually named companies, and "Broad Named Insureds," including any of Emerson Electric's subsidiaries, majority-owned partnerships and joint ventures, and any party required to be insured under any contract or agreement.
 {¶ 9} The policy also declared that it would cover only those autos where a charge for a premium was indicated and applied only to those autos shown as covered autos. Covered autos for the purpose of uninsured motorists coverage were defined as "[o]nly those autos you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." The policy provided a schedule of covered autos that indicated that the schedule of vehicles was on file with Old Republic.
 {¶ 10} An "insured" was defined as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." Under the liability coverage form's definition of who is an insured the following applied, in part: "You for any covered `auto'" and "anyone else while using with your permission a covered `auto' you own, hire or borrow." Excluded from that second definition was an employee "if the covered `auto' [was] owned by that employee or a member of his or her household."
 {¶ 11} A subsequent undated endorsement added the following to the liability coverage of "Who Is An Insured: "[a]ny employee while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs. A nonowned auto includes autos owned by employees or members of their households when used `in your business or your personal affairs."'
 {¶ 12} The Ohio Uninsured Motorists Coverage-Bodily Injury endorsement indicated, in part, that it applied to a "covered `auto' licensed or principally garaged in * * * Ohio." It also listed as the named insured "Emerson Electric Co., et al." It defined an insured as "you" and "[i]f you are an individual, any family member."
 {¶ 13} Old Republic relies on another endorsement to support its claim of no coverage. Included as additional named insureds on the endorsement captioned "Drive Other Car Coverage-Broadened Coverage for Named Individuals," effective 12/17/1997, were individual corporate executives assigned a company vehicle for business and personal use and their spouses residing in the same household while using a covered auto. For purposes of uninsured motorist coverage under this endorsement, the persons under "who is an insured" were "[a]ny individual named in the schedule and his or her `family members' * * * while `occupying or while a pedestrian when being struck by any auto' you don't own except [a]ny auto owned by that individual or by any `family member.'" A covered auto was an auto that "you don't own, hire, or borrow." There is no dispute that Sandra was not a corporate executive. Unfortunately, for Old Republic, however, this endorsement was not in effect at the time of the accident. And we do not consider it.
 {¶ 14} Even were we to assume that the Hollands were insureds under the BAC policy generally, they were not insured under the circumstances of the instant case. The policy clearly limited its coverage to a defined set of covered autos. And even if we assume for the sake of argument only that covered autos included not only autos owned by Emerson Electric, but also autos owned by employees and family members, the auto involved in this case was not a covered auto as defined in the policy. It was owned by a third party unrelated to Emerson Electric or Sandra. Thus, we conclude that the Hollands were not entitled to uninsured motorists coverage under the BAC policy.
 {¶ 15} In their second assignment, the Hollands claim that they were entitled to coverage under the CGL policy by operation of law. Because the policy was in effect before H.B. No. 231 amended R.C. 3937.18, we must determine whether the policy was a motor vehicle policy subject to the version of R.C. 3937.18 then in effect. Before H.B. No. 231 amended R.C. 3937.18, the statute provided that no automobile liability policy of insurance could be issued with respect to any motor vehicle registered in Ohio unless uninsured motorists coverage in an amount of coverage equal to the automobile liability or motor vehicle liability coverage was provided to the insured. Consequently, if Old Republic's CGL policy provided coverage for bodily injury resulting from the use of an automobile, then uninsured motorists coverage applied by operation of law.[5]
 {¶ 16} The policy specifically excluded bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto,' or water craft owned or operated by or rented or loaned to any insured." An exception to the exclusion applied to "[p]arking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured" and bodily injury arising out of the operation of certain designated mobile equipment. An "auto" was defined as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But `auto' does not include `mobile equipment.'"
 {¶ 17} We agree with other courts that have concluded that the parking exception provided only incidental coverage for automobiles and did not convert the policy into an automobile policy or a motor vehicle policy subject to the provision of uninsured motorists coverage.[6]
Contrary to the Hollands' argument, Selander v. Erie Ins. Group,[7]
does not apply. Unlike the Selander policy, the Old Republic CGL policy did not provide coverage for nonowned or hired vehicles. It only provided coverage for the parking of autos not owned by Emerson Electric.[8] We find no merit in this argument.
 {¶ 18} Because the Hollands' assignments of error have no merit, we need not address Old Republic's additional arguments raised in its cross-appeal.
 {¶ 19} Therefore, the judgment of the trial court is affirmed.
 {¶ 20} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Painter, JJ.
[1] Scott-Pontzer v. Liberty Mut. Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, 710 N.E.2d 1116.
[2] See Acree v. CNA Ins. Cos., 1st Dist. No. C-020710, 2003-Ohio-3043, ¶ 5.
[3] Id., citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
[4] Black's Law Dictionary (7 Ed.Rev. 1999) 573.
[5] See Gruelich v. The Hartford, 8th Dist. No. 80987, 2002-Ohio-7229, ¶ 37.
[6] See Ryan v. Dolin, 8th Dist. No. 81689, 2003-Ohio-2738; Smith v.Air-Ride, Inc., 10th Dist. No. 02AP-719, 2003-Ohio-1519.
[7] Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541,709 N.E.2d 1161.
[8] See Bowling v. St. Paul Fire Marine Ins. Co.,149 Ohio App.3d 290, 2002-Ohio-4933, 776 N.E.2d 1175, ¶ 22.